# Supreme Court of Texas

No. 22-0499

Surfvive, Anubis Avalos, and Adonai Ramses Avalos,

*Petitioners,*

v.

City of South Padre Island,

*Respondents*

On Petition for Review from the
Court of Appeals for the Thirteenth District of Texas

JUSTICE YOUNG, concurring in the denial of the petition for review.

The Code of Ordinances of South Padre Island contains several limitations on food-truck licensing. Surfvive (a nonprofit entity) and the Avalos brothers wish to operate food trucks on the Island but claim that two provisions of an ordinance unconstitutionally block them from doing so. One of the provisions purports to deny a food truck the right to operate unless an existing restaurant—a competitor—grants approval to the newcomer by signing the food truck's permit application. The validity of that part of the ordinance, at least, raises serious and important legal

questions. I nonetheless agree with the Court's decision to await a more suitable case for addressing them and write separately to explain why.

**I**

Petitioners Surfvive and the Avalos brothers operate food trucks outside South Padre Island and want to begin operations on the Island. A city ordinance, however, conditions eligibility for a food-truck permit on approval from a local restaurant: "Applicant[s] must be supported locally and have the signature of an owner or designee of a licensed, free-standing food unit on South Padre Island before being eligible for a permit." South Padre Island, Tex., Code of Ordinances § 10-31(C)(3). In other words, the government purports to forbid a food truck from entering the market unless an existing business "support[s]" the newcomer and grants permission to enter the market by signing the permit application.[*]

Petitioners more than plausibly argue that requiring permission from a competitor to run a food truck violates their economic-liberty rights under the Texas Constitution's "due-course clause," which provides that "[n]o citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the

---

[*] Petitioners also challenge a second provision of the same enactment, which caps new monthly food-truck permits at eighteen: "No more than eighteen (18) mobile food unit permits may be issued per month on the Island." South Padre Island, Tex., Code of Ordinances § 10-31(C)(2). This monthly cap—which started at six, increased to twelve, and then to eighteen—still allows over 200 new food trucks to come into operation annually. This limit does not materially diminish access yet allows for orderly and timely health-and-safety inspections of new food-vending sources. I doubt that the challenge to this cap "presents a question of law that is important to the jurisprudence of the state." Tex. Gov't Code § 22.001(a). I therefore confine myself to the provision requiring a competitor's permission and do not further address the permit cap.

2

due course of the law of the land." Tex. Const. art. I, § 19.

The City defends its ordinance with two main theories: (1) public health and (2) economic development. Obtaining a competitor's permission advances public health, the City argues, because it implements a state regulation requiring that food trucks "shall operate from a central preparation facility or other fixed food establishment and shall report to such location daily for supplies, cleaning, and servicing operations." *See* 25 Tex. Admin. Code § 228.221(b)(1). But *how* does requiring a local restaurateur to sign off on a new food truck effectuate that state regulation? The ordinance's text in no way addresses that supposed goal. It simply expresses a policy that newcomers "must be supported locally," without any link either to the state regulation or public health more generally.

Faced with this objection, the City's brief in this Court contends that the competitor-permission ordinance is actually an "alternative" to the State's requirement. This argument is no more convincing. If state law truly requires a physical facility, the City certainly cannot exempt anyone from that mandate. And if the City lawfully can impose its own "alternative" regulation, the one that it has adopted does not have any apparent rational link to protecting public health. Nothing in the ordinance requires a private business to sign off on food trucks with the finest health standards or to refuse their signatures for food trucks at the other end of the scale. The local restaurateur's approval is not conditioned on *anything* related to public health.

The City's second rationale—fostering economic development—is perhaps more candid but, in my view, is equally problematic. The court

of appeals held that the competitor-permission requirement is rationally related to economic development because it "was created to promote economic development" by "retaining current businesses and preventing economic decline." 2022 WL 2069216, at *8 (Tex. App.—Corpus Christi–Edinburg June 9, 2022).

Assuming for argument's sake that the law authorizes government mandates that rationally advance this goal, would the competitor-permission requirement survive rational-basis scrutiny? I have my doubts. The most competitive new market entrant, one would assume, would be the least likely for an existing business to welcome. Or a business may welcome a new food truck because it thinks that the newcomer would be a thorn in the side of an existing competitor. Other than randomly (at best), it is not at all clear that the wholly unguided power vested in existing businesses would advance any coherent concept of economic development. Economic protectionism might be closer to the mark than economic development; the only thing that the competitor-permission requirement can guarantee, after all, is that *some* new businesses will be thwarted.

As far as I know, however, this Court has never held that raw economic protectionism of some citizens is a legitimate justification for governmental action in derogation of the rights of others. At the very least, constitutional concerns would be raised by a theory that picks winners and losers in such a naked way. *See, e.g.*, Tex. Const. art. I, § 3 ("All freemen, when they form a social compact, have equal rights, and no man, or set of men, is entitled to exclusive separate public emoluments, or privileges, but in consideration of public services."). Assuming, again

4

for argument's sake, that the government may not *directly* rely on protecting existing businesses to block new entrants, it hardly seems likely that the government could delegate that power to private individuals, especially when the delegation lacks any guiding standards as to how individuals vested with that power should wield it.

All of this makes me think that the ordinance may actually suffer more from a *nondelegation* than a *due-course* problem. In a seminal case, Chief Justice Phillips explained for the Court that delegations of government power to private individuals or groups "raise . . . troubling constitutional issues," obligating courts to "subject private delegations to a more searching scrutiny than their public counterparts." *Tex. Boll Weevil Eradication Found., Inc. v. Lewellen*, 952 S.W.2d 454, 469 (Tex. 1997). Such scrutiny includes an inquiry into whether the delegation contains limits on a private delegate's power, whether the lawmaker has "provided sufficient standards to guide the private delegate in its work," and whether "the private delegate [has] a pecuniary or other personal interest that may conflict with his or her public function." *Id.* at 472.

The challenged provision seems to me unlikely to survive *any* of these standards. Far from limiting existing restaurateurs' power, it grants them unfettered discretion to give or withhold approval, which is neither required for the most sterling food truck nor forbidden for the filthiest. Correspondingly, the ordinance provides no criteria for judging applicants who seek an existing restaurateur's signature. Unsurprisingly, there is no way to challenge the grant or denial of a signature. And existing businesses obviously have personal and financial interests in protecting their own turf (or harming their chief competitors).

## II

On the other hand, I doubt that this case is a good one for us to address any of the legal issues that I have described. With respect to nondelegation, the parties have not argued it, even though the grant of governmental authority to private actors is among the chief reasons that the ordinance might be problematic. We accordingly have no developed record or arguments focusing on this problem. For the same reason, the court of appeals has been unable to opine on it.

The due-course arguments are problematic for this Court's review for quite different reasons. On the one hand, if the real problem is actually nondelegation, which we cannot address, then attempting to resolve the case under the due-course clause might distort our analysis. On the other hand, if the case *does* present a clean due-course problem, then it seems so glaring a problem that the Court would have little ability to develop the law. In other words, if the ordinance would fail even the most basic rational-basis test, then the stated aim of the litigation— developing any distinct meaning of the Texas due-course clause—would, at best, be foiled. At worst it would be impaired, given the risk that we might conflate the standards necessary to resolve *this* case and the standards that the clause actually imposes (or the opposing risk that we might announce new and more demanding due-course standards despite lacking a record that actually tests them).

These risks are heightened because our precedents have yet to resolve what the due-course clause protects and how it does so. As I have written previously, the scope of this provision is a matter of monumental importance to Texans and something that must be determined only after

6

careful thought and consideration in cases that *unquestionably* implicate it. *See Tex. Dep't of State Health Servs. v. Crown Distrib. LLC*, 647 S.W.3d 648, 664 (Tex. 2022) (Young, J., concurring).

Every decision of this Court is precedential and must be followed by every Texas court in every other case. Accordingly, it is not primarily the parties or facts in a single dispute that determine the propriety of granting review. Rather, *even when we are troubled by a lower-court decision*, we should exercise our discretion to deny review when we conclude that taking up a case is as likely to harm or muddy the law as to benefit or clarify it. The very importance of the due-course clause means that we should neither delay addressing this provision of our Constitution nor rush into doing so if waiting is necessary to be sure that we do it well.

Of course, we could in theory still take up this case—even in a per curiam opinion—just to vindicate existing law. But other problems with this case lead me to doubt that taking even such a comparatively modest step (much less a full grant of review) would be wise.

For instance, the courts typically do not become involved in disputes about permitting until the local permitting process has been exhausted. I do not fault petitioners for believing that an ordinance like this one is fatally flawed. But neither petitioner let the process play out to *prove* it—to *show* that they could not obtain permits without recourse to the courts. The Avalos brothers, for example, never submitted an application to the City. Surfvive submitted one, but it was incomplete because of several important omissions apart from the competitor-permission requirement. For the approved location address, for example,

7

it listed an area of operation that was not zoned for food trucks. The City therefore had multiple grounds for an initial denial. Rather than correcting its application, Surfvive withdrew it.

All of that, one might think, is small beer compared to the competitor-permission requirement. Likely true—and all the more reason to dot every *i* and cross every *t*, so that petitioners could prove that the City would not budge on its problematic requirement and that a denial could be explained by nothing other than that requirement.

But even if we set aside the other application defects, I would still be doubtful. Nothing suggests that petitioners made any effort to obtain a signature from a restaurateur on the Island. Perhaps they should not be required to do so; after all, their contention is that the requirement is wholly invalid. Yet if the real goal was to operate food trucks, and not just to obtain judicial precedents, one would expect a modicum of effort to comply with what might turn out to be a minimal burden—or, *at the least* (in Surfvive's case), to accept a signature when one was offered. In her deposition, Surfvive's co-founder and designated representative confirmed that when a local restaurant owner "saw something on Facebook" about Surfvive's problem, "he just reached out to me in an email and said, 'Hey, how can I help?' *And I never responded to that*." (Emphasis added.) She confirmed that she understood his offer to be one of "willing[ness] to sign off on" the application. She also agreed that she "would be able to find a restaurant owner willing to work with" her, but stated "I don't think I should have to" and that the offer of help came "after we had already filed the lawsuit."

Fair enough. But if petitioners' true desire was to operate food

trucks, and if that desire may well have been easily accommodated, this case seems less than ideal as a basis for this Court to take up the solemn constitutional duty of giving scope and meaning to our due-course clause. Judicial review should be a last resort, not a first impulse. Especially at this Court, it is not necessary to conclude that the features I have described rise to a jurisdictional bar—*e.g.*, that there was a lack of ripeness (for not exhausting the application process) or of standing (for not truly being injured, given the refusal to take "yes" for an answer)—to think that those features counsel against granting review. My reluctant conclusion is that these concerns do not deprive us of jurisdiction but help show why we would be imprudent to exercise it.

*   *   *

For the foregoing reasons, I concur in the Court's denial of the petition for review.

Evan A. Young
Justice

**OPINION FILED:** November 3, 2023

9